UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| FRANK A. SANTILLI and MONICA D. SANTILLI, | ) ) ) | Chapter 7 |
| | ) | |
| Debtors. | ) | Case No. 16-14713 |
| | ) | *Consolidated with* |
| | ) | Case No. 16-23020 |
| | ) | |
| PREFERRED CAPITAL FUNDING OF, ILLINOIS, LLC, | ) ) ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v. | ) ) | Adversary Proceeding No.: 16-00707 |
| | ) | |
| FRANK SANTILLI, | ) | |
| | ) | |
| Debtor-Defendant. | ) ) | Honorable Jacqueline P. Cox |

## AMENDED MEMORANDUM OPINION

This matter is before the Court for ruling on Plaintiff's adversary to determine dischargeability of debts under 11 §§ U.S.C. 523(a)(2)(A), (a)(4), and (a)(6). The Plaintiff argues *inter alia*, that the Debtor made false representations and omissions in the course of not repaying loans made to Debtor's law firm clients.

**I. Jurisdiction**

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

Venue is appropriate for the Court pursuant to 28 U.S.C. § 1409(a). It is a core proceeding under 28 U.S.C. § 157(b)(2)(I) – a determination as to the dischargeability of a particular debt.

**II. Facts and Background**

Frank and Monica Santilli's Chapter 7 bankruptcy was consolidated with the Chapter 7 bankruptcy filed by Mr. Santilli's former law firm, the Santilli Law Group, Ltd. Dkt. 43 of the bankruptcy case. The Plaintiff, Preferred Capital Funding of Illinois, LLC (hereinafter "PCF") is a creditor of the Debtor's consolidated estate. Transcript of January 24, 2018 Adversary Hearing, p. 17 (hereinafter "Transcript"). Unless otherwise described in this Opinion "Debtor" refers to Mr. Santilli and the Santilli Law Group, Ltd.

From May 1989 to September 2016 Mr. Santilli was an attorney and sole owner of the Santilli Law Group (hereinafter "SLG"). SLG specialized in representing individuals with personal injury and worker's compensation claims. On September 22, 2016, Mr. Santilli was disbarred on consent by the Illinois Supreme Court for misconduct, including but not limited to knowingly misappropriating client settlement funds. Plaintiff's Trial Binder Exhibit Nos. 14, 21. At all times relevant to this adversary, Mr. Santilli was the sole check writer for SLG and had sole access to the firm's client trust account. Transcript, p. 107. Mr. Santilli and the Plaintiff's President, Brian Garelli, have known each other for approximately 10 years. Transcript, p. 38. Over that period of time, PCF has made loans to approximately 100 of Mr. Santilli's clients. *Id.*

PCF provides loans to individuals to help with living expenses while they continue to pursue their personal injury or worker's compensation claims. Transcript, p. 27. PCF in turn expects to be repaid from settlement proceeds or money judgments decided in the client's favor. *Id.* at 31. Almost all of PCF's clients come from attorney referrals that have a client that cannot afford to wait until

their case settles. *Id.* at 24. PCF's clients are the individuals who have taken out the loans, not the law firm providing the referral.

PCF asks clients to sign and return two sets of documents before extending a loan. The first is a promissory note signed by the client that explains the terms of the loan. Transcript, p. 28. The second is a letter of direction (labeled a convenience or an acknowledgment form) signed by the client's attorney that obligates the attorney to pay PCF from any money obtained in the lawsuit. *Id.* at 31. PCF is unable to independently verify the status of their clients' cases because settlement negotiations are confidential, so they get updates from the clients' attorneys and log the notes of each communication in their computer system. *Id.* at 34 – 35.

The subject of this adversary includes unpaid loans where the Debtor did not direct settlement proceeds to PCF after receiving and depositing settlement checks in his law firm's client trust account. PCF's initial complaint included 13 clients but evidence at trial was provided for 10 clients; the three omitted clients include Jesse Sykes, Jasmine. Bright, and Tyrone O'Neal. Dkt. 1 of the adversary. PCF provided evidence of seven closing statements the law firm sent to its clients that explain how their settlement proceeds, *inter alia*, paid their PCF loan in full. *See* Dkt. 1 of the adversary, Exhibit A. Proof of PCF loans is evidenced by promissory notes. *See* Plaintiff's Trial Binder for Exhibits 1A, 2A, 3A, 4A, 6A, 7A, 8A, 9A, 10A. Mr. Santilli or someone from SLG signed a letter of direction for all of PCF's clients. *See* Plaintiff's Trial Binder for Exhibits 1B, 2B, 3B, 4F, p. 24 (presigned), 6B, 7B, p.2, 8B, 9B, 10B, 11B, p. 2, 12B.

What follows is a summary of Plaintiff's testimony from the January 24, 2018 trial. All citations in the list below reference the Plaintiff's Trial Binder.

1. Crystal Straw's settlement check for $3,500.00 was deposited by the Debtor in his client trust account on September 2, 2015. Ex. 1D. When PCF inquired about the status of the case three weeks later on September 23, the Debtor explained that the "matter has settled." Ex. 1E, p. 2. In 2016, when PCF followed up on January 12 and February 22 the Debtor first stated that the "case was in litigation" and later that the "case has settled, and client has been paid." Ex. 1E, p.1.

2. Jeffery Johnson's settlement check for $1500.00 was deposited by the Debtor in his client trust account on December 16, 2015. Ex. 2D. In 2016 when PCF inquired about the status of the case on January 8 and 12 respectively, the Debtor stated "I'm pretty sure the check has come in unfortunately;" and that the case was "in litigation." Ex. 2E. p. 1.

3. Jermaine Chambers' settlement check for $18,000.00 was deposited by the Debtor in his client trust account on June 3, 2015. Ex. 3F. In 2015, when PCF inquired about the status of the case on June 18, September 9, October 5, and December 3, the Debtor stated that he was either "waiting on Medicare" or "having Medicare issues." Ex. 3G, p. 1-2. In 2016, when PCF inquired about the status of the case on January 8 and February 15, the Debtor stated on both occasions that he was "still waiting on Medicare." Ex. 3G p. 1.

4. Adonnas Brown's settlement check for $52,000.00 was deposited by the Debtor in his client trust account on December 18, 2015. Ex. 4D. When PCF inquired about the status of the case on January 14, 2016 the Debtor stated that he was "still waiting on [the] check." Ex. 4E, p. 3.

5. Ruben Machado's settlement check for $30,572.20 was deposited by the Debtor in his client trust account on June 25, 2015. Ex. 6E. When PCF inquired about the status of the

case the next month on July 21 the Debtor stated that the "case was settled, we have been waiting for the check." Ex. 6F, p. 2.

6. La Dawn Howard's settlement check for $12,500.00 was deposited by the Debtor in his client trust account on March 3, 2016. Ex. 7E. When PCF inquired about the status of the case the next month on April 6 the Debtor stated that the "[p]ayment was sent Monday." Ex. 7F. p. 1.

7. Percy Carter's settlement check for $124,635.00 was deposited by the Debtor in his client trust account on October 6, 2015. Ex. 8E. On November 10, 2015 the notes from PCF's computer system state that "Brian [President of PCF] was in our office and Frank is going over loans with him." Ex. 8F, p. 2. On January 4, 2016 PCF also sent an email to the Debtor as the notes indicate "BTG em'd atty – Frank we need to get these cleaned up. Let me know where you are on them." Ex. 8F, p. 2. Later that same year on July 1, the ARDC received Percy Carter's ARDC complaint against Mr. Santilli for misappropriating client funds. Ex. 8G.

8. Francois Stinson's settlement check for $20,000.00 was deposited by the Debtor in his client trust account on January 22, 2016. Ex. 9E. When PCF inquired about the status of the case on March 23 of the same year, the Debtor stated they are "still waiting on final disbursement." Ex. 9F.

9. Dewan Johnson's settlement check for $17,500.00 was deposited by the Debtor in his client trust account on September 17, 2012. Ex. 10E. PCF presented no evidence demonstrating any communication with the Debtor for this client.

10. Mr. Santilli represented Wayne Lopez in two lawsuits against three defendants. PCF provided Mr. Lopez with loans they expected to be repaid from each of the defendants. The defendant in the first lawsuit was Ingram Logistics (Ingram); the second lawsuit included as defendants Stamar Packaging Inc. (Stamar) and Chucking Machine Pro (Chucking). The Debtor deposited three settlement checks in his client trust account for the aforementioned defendants as follows; Ingram check for $30,318.75 on December 24, 2013; Stamar check for $59,999.00 on February 12, 2012; Chucking check for $13,840.51 on February 21, 2012. *See* Ex. Nos. 11E, 12D, 12F. On December 16, 2015, the Debtor told PCF that the "contracts are not submitted yet…fighting with medical bills." Ex. 11F, p. 2, 12H, p. 1. On January 26, 2016, the Debtor told PCF that the "contracts have been approved. We are waiting on settlement check." *Id.*

PCF seeks dischargeability of the aforementioned debts under 11 §§ U.S.C. 523(a)(2)(A), (a)(4), and (a)(6). The Debtor answered PCF's initial adversary complaint and denied several material facts. A trial was held on January 24, 2018. The Debtor was not allowed to present any exhibits or witnesses at the trial because he did not comply with the court's pre-trial order requiring prior disclosure of exhibits and witnesses. Dkt. 9 of the adversary. The Debtor stipulated to all the documentation that the Plaintiff submitted as evidence. Transcript, p. 8.

Based on the pleadings, the evidence submitted at the January 24, 2018 trial, counsels' arguments, and for the reasons set forth in this opinion, the Debtor's discharge is denied for the debt owed to PCF for loans made to Crystal Straw, Jeffery Johnson, Jermaine Chambers, Adonnas Brown, Ruben Machado, La Dawn Howard, Percy Carter, Francois Stinson, Dewan Johnson, and Wayne Lopez.

### III. Discussion

### Establishment of Debt

There are "two distinct issues in a nondischargeability proceeding. The first, the establishment of the debt itself, is governed by the state statute of limitations—if suit is not brought within the time period allotted under state law, the debt cannot be established. [But] the question of the dischargeability of the debt under the Bankruptcy Code is a distinct issue governed solely by the limitations periods established by bankruptcy law." *Collazo v. Collazo (In re Collazo)*, 817 F.3d 1047, 1051–52 (7th Cir. 2016) (*quoting In re McKendry*, 40 F.3d 331, 337 (10th Cir.1994)).

The court will now examine if a debt was established under Illinois law. PCF seeks to hold Mr. Santilli, (an attorney for all times relevant for this case) personally liable for the debts at issue. The issue before this court is whether PCF's debt was established under Illinois law. In Illinois,

> An action for damages based on tort, contract, or otherwise (i) **against an attorney arising out of an act or omission in the performance of professional services** or (ii) against a non-attorney employee arising out of an act or omission in the course of his or her employment by an attorney to assist the attorney in performing professional services must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought. 735 ILCS 5/13-214.3(b) (emphasis added).

The Illinois Supreme Court clarified that the 'arising out of' language "indicates an intent by the legislature that the statute apply to all claims against attorneys concerning their provision of professional services. There is no express limitation that the professional services must have been rendered to the plaintiff. Nor does the statute state or imply that it is restricted to claims for legal malpractice." *Evanston Ins. Co. v. Riseborough*, 2014 IL 114271, ¶ 23, 5 N.E.3d 158, 166.

7

Mr. Santilli and SLG signed letters of direction that established his duty to forward clients' funds to PCF. PCF's damages arose out of Mr. Santilli's breach of his professional duty and contract obligations.

With respect to the 2 year statute of limitations, "[U]nder the discovery rule, a statute of limitations begins to run when the purportedly injured party has a reasonable belief that the injury was caused by wrongful conduct, thereby creating an obligation to inquire further on that issue; knowledge that an injury has been wrongfully caused does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action." *Janousek v. Katten Muchin Rosenman LLP*, 2015 IL App (1st) 142989, ¶ 13, 44 N.E.3d 501, 505 (Ill. App. Ct. 1st Dist. 2015).

January 12, 2016 was the earliest date that an update from SLG was sufficiently inconsistent to put PCF on notice that there could be wrongdoing. The September 23, 2015 update from SLG had been that the case had been settled. But on January 12, 2016 the update from SLG was that the case was in litigation. Mr. Garelli or his staff knew or should have noticed that without further explanation the two updates were materially inconsistent. Assuming January 12, 2016 was the earliest that PCF should have discovered the misconduct, the 2 year deadline for bringing a claim would have ended January 12, 2018.[1] PCF filed their complaint against Mr. Santilli and SLG on November 29, 2016. Therefore, PCF has satisfied the statute of limitations requirement for claims against Mr. Santilli under Illinois law.

---

[1] Federal Rules of Bankruptcy Procedure 4007(b) provides that a creditor may file a complaint to obtain a determination of the dischargeability of debt at any time.

## Piercing the Corporate Veil

Central to PCF's complaint is piercing SLG's corporate veil to hold Mr. Santilli personally liable for the loans that were not paid back. In Illinois, piercing the corporate veil is not a cause of action but, rather, a means of imposing liability in an underlying cause of action. *Buckley v. Abuzir*, 2014 IL App (1st) 130469, ¶ 9, 8 N.E.3d 1166, 1169 (*citing Peetoom v. Swanson*, 334 Ill.App.3d 523, 527, 268 Ill.Dec. 305, 309, 778 N.E.2d 291, 295 (2002)).

In order to pierce the corporate veil under Illinois law, (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice. *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751–52 (7th Cir. 2012) (internal citations omitted).

With respect to the first prong, Illinois courts use the following factors to evaluate whether a unity of interest and ownership exists: inadequate capitalization; failure to issue stock; failure to observe corporate formalities; failure to pay dividends; corporate insolvency; nonfunctioning corporate officers; missing corporate records; commingling of funds; diversion of assets to an owner or other entity to creditor detriment; failure to maintain an arm's-length relationship among related entities; and whether the corporation is a mere façade for a dominant owner. *Banco Panamericano, Inc.*, 674 F.3d at 752 (*quoting Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 503, 840 N.E.2d 767, 778 (2005). No single factor is determinative. *Id.* (internal citations omitted).

In this case, every factor was not relevant to the determination of whether there was unity of interest and ownership. However, PCF did not file its adversary until SLG filed for Chapter 7 bankruptcy, demonstrating corporate insolvency. The court has not been told what happened to the

9

funds that were deposited into SLG's client trust account; however, the Debtor's failure to pay PCF operated to its detriment. Lastly, the core of PCF's complaint is the intentional mishandling of client funds; this claim is substantially similar to the charges that the ARDC filed against Mr. Santilli. After a series of punitive measures, Mr. Santilli was ultimately disbarred by consent for knowingly misappropriating $500,000.00 of client funds. Furthermore, the Debtor and his law firm SLG did not operate separately. Only an attorney can operate a law firm. Illinois Rule of Professional Conduct 5.4(b) (A lawyer shall not form a partnership with a nonlawyer if any of the activities of the partnership consist of the practice of law.). The court finds that based on the evidence presented, there existed a unity of interest and ownership between Mr. Santilli and his law firm.

PCF also satisfies the burden of showing that a finding of separate corporate existence between SLG and Mr. Santilli would sanction a fraud or promote injustice. At all times relevant for this case Mr. Santilli was the sole owner and check writer for SLG. Injustice would be promoted if the veil does not get pierced; we would condone Mr. Santilli's conduct that misled PCF regarding the status of his clients' cases. There is a unity of interest and ownership between and SLG and Mr. Santilli such that sanctioning a separate corporate existence would promote an injustice. The evidence supports PCF's request to pierce SLG's corporate veil and hold Mr. Santilli personally liable for the debts he caused to go unpaid.

Having found that PCF has established a debt under Illinois law and that Mr. Santilli is personally liable for that debt, the court will now determine the dischargeability of those debts under 11 §§ U.S.C. 523(a)(2)(A), (a)(4), and (a)(6).

**Count I – 11 U.S.C. § 523(a)(2)(A)**

11 U.S.C. § 523(a)(2)(A) provides an exception for discharge for certain debts if the creditor can establish that the debt is for money, property, [or] services, … obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. There are three separate grounds for holding a debt to be nondischargeable under section 523(a)(2)(A) including: false pretenses, false representation and actual fraud. *In re Glenn*, 502 B.R. 516, 529 (Bankr. N.D. Ill. 2013), *aff'd sub nom. Sullivan v. Glenn*, 526 B.R. 731 (N.D. Ill. 2014), *aff'd*, 782 F.3d 378 (7th Cir. 2015). PCF asserts that Mr. Santilli's debt was obtained by false pretenses or false representation.

"To except a debt from discharge under section 523(a)(2)(A) based on false pretenses or a false representation, the creditor must establish the following elements: (1) the debtor made a false representation or omission of fact; (2) which the debtor (a) knew was false or made with reckless disregard for its truth and (b) made with an intent to deceive; and (3) upon which the creditor justifiably relied." *Glenn*, 502 B.R. at 530 (*quoting Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553 (7th Cir. 2011)).

**Mr. Santilli's False Misrepresentation**

Under 11 U.S.C. § 523(a)(2)(A) a false representation is an express misrepresentation that can be demonstrated either by a spoken or written statement or through conduct. *Id.* (internal citations omitted). As the evidence indicates, Mr. Santilli made consistently made false statements on each case in question via phone, email, and in a meeting with the President of PCF. The falsity of Mr. Santilli's statements is evident as his statements conflict with the reality that the cases were already settled and the checks had been cashed.

11

**Mr. Santilli's False Pretenses**

A false pretense does not necessarily require overt misrepresentations. *Glenn*, 502 B.R. at 531 (*quoting Sterna v. Paneras (In re Paneras)*, 195 B.R. 395, 406 (Bankr.N.D.Ill.1996)). "Instead, omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that omissions or failure to disclose create a false impression which is known by the debtor." *Id.* In this case, Mr. Santilli's omissions regarding the true status of his cases continued through the date PCF filed their complaint. Mr. Santilli was aware that the material facts in each case were whether it had settled and when PCF could expect its loans to be repaid. These are the very facts that Mr. Santilli misrepresented by false pretenses.

**Intent to deceive**

An "[I]ntent to deceive may be determined from the totality of the circumstances of a case and may be inferred when the facts and circumstances present a picture of deceptive conduct on the debtor's part." *Logan v. Logan (In re Logan)*, 327 B.R. 907, 910 (Bankr. N.D. Ill. 2005) (*quoting In re Scott*, 294 B.R. 620, 628 (Bankr.W.D.Pa.2003)). In this case, Mr. Santilli's intent can be discerned from the facts and circumstances presented at trial. Mr. Santilli's conduct consisted of material misstatements and omissions on cases where he had already cashed the settlement checks. To maintain this level of misconduct for 10 clients over 5 years shows an intent to mislead PCF as long as possible. Based on the totality of the circumstances, the court finds that Mr. Santilli intended to deceive PCF.

**Justifiable Reliance**

Justifiable reliance means a person is required to use his senses and cannot recover if he blindly relies "upon a misrepresentation the falsity of which would be patent to him if he had utilized

12

his opportunity to make a cursory examination or investigation." *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010) (*quoting Field v. Mans,* 516 U.S. 59 at 71, 116 S.Ct. 437). PCF has shown that its reliance was not blind and that it exercised due diligence in investigating the status of its cases. First, the court notes that Mr. Santilli referred approximately 100 of his clients to PCF and there were no issues or problems with those cases that should have prompted PCF to cease doing business with him. The client referral history, combined with the President of PCF and Mr. Santilli's knowing each other for 10 years gives credence to a sense of business trust that justified PCF making further loans to Mr. Santilli's clients. PCF's trust, however, was verified through frequent requests for updates on their clients' cases. The court notes that PCF had no other access to the relevant information. In none of the cases at issue did Mr. Santilli provide an update that suggests a case was lost or otherwise on the verge of failure. Instead, all of the updates provided by Mr. Santilli described a positive disposition that the cases had settled save housekeeping matters (e.g. "Waiting on check.") or that the case was "in litigation." Therefore, PCF's reliance was justifiable due to prior positive business dealings; Mr. Santilli's false pretenses made it appear that any current and/or future loans would likely have a positive outcome. Mr. Santilli knowingly made false representations with the intent to deceive upon which PCF justifiably relied. Therefore, the court finds that PCF has established by a preponderance of evidence that the debts that Mr. Santilli owes to PCF are non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

### Count II – 11 U.S.C. § 523(a)(4)

11 U.S.C. § 523(a)(4) provides an exception from discharge for debts if a creditor can establish that the debtor has committed fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. PCF asserts that the Debtor embezzled funds. The court notes that a trust

13

or fiduciary relationship need not be established in order to find a debt excepted from discharge by an act of embezzlement. *Jacobs v. Jacobs (In re Jacobs)*, 448 B.R. 453, 477 (Bankr. N.D. Ill. 2011) (*citing Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 390 (Bankr.N.D.Ill.1994)). The *Jacobs'* court held that debts for unpaid wages and lost pension benefits owed to a former employee were non-dischargeable.

For purposes of section 523(a)(4), embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *Jacobs*, 448 B.R. at 477 (Bankr. N.D. Ill. 2011) (*quoting In re Weber*, 892 F.2d 534, 538 (7th Cir.1989)). To establish a claim for embezzlement, a creditor must prove that: (1) the debtor appropriated the creditor's property for the debtor's own benefit; and (2) the debtor acted with fraudulent intent or deceit. *Id.* The court will address each of these requirements.

Regarding appropriation, no evidence was presented to undermine the fact that all settlement proceeds were lawfully received by Mr. Santilli. PCF entrusted Mr. Santilli to remit the amount needed to satisfy its outstanding loans from settlements and verdict proceeds. Similarly, PCF's clients entrusted the Debtor to make sure that their loan was repaid according to the agreed upon terms. Mr. Santilli was the only person who had signatory authority for SLG's bank accounts. Since 2012, none of the loans in question have been repaid, which benefitted Mr. Santilli to the detriment of PCF. The court finds that Mr. Santilli appropriated PCF's funds for his own benefit.

PCF has established that Mr. Santilli acted with intent to deceive. Each falsehood that Mr. Santilli made to PCF was intended to make it believe that a case was not settled when it was or that there were lien issues regarding a check that had been cashed. Furthermore, the closing statements that Mr. Santilli sent to his clients explained that their proceeds were reduced by the amount needed

14

to satisfy their PCF loan. In fact, one of PCF's clients, Percy filed an ARDC complaint against Mr. Santilli for misappropriating settlement funds. These facts lead the court to find that Mr. Santilli acted with the requisite intent to deceive.

One court stated that "[I]t is knowledge that the use is devoid of authorization, scienter for short...that makes the conversion fraudulent and thus embezzlement." *In re Gibson*, 521 B.R. 645, 655 (Bankr. W.D. Wis. 2014) (internal citations omitted). Mr. Santilli had knowledge of his obligation to pay PCF before settlement checks were received. The refusal to pay PCF amounts to conversion but Mr. Santilli's knowledge is what makes his conversion, embezzlement. The court finds that PCF has established by a preponderance of evidence that the debts that Mr. Santilli owes to PCF are non-dischargeable under 11 U.S.C. § 523(a)(4).

### Count III - 11 U.S.C. § 523(a)(6)

11 U.S.C. § 523(a)(6) provides an exception to discharge for certain debts for willful and malicious injury by the debtor to another entity or to the property of another entity. A claim under section 523(a)(6) has three elements: (1) the debtor caused an injury; (2) the debtor's actions were willful; and (3) the debtor's actions were malicious. *Braverman v. Braverman (In re Braverman)*, 463 B.R. 115, 119 (Bankr. N.D. Ill. 2011) (*quoting Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 356 (Bankr. N.D. Ill. 2001)). In this case, the injury caused by Mr. Santilli was not paying PCF which in turn caused PCF to lose both their initial investment and any interest it had earned.

An action is "willful" if both the action itself and the resulting injury are intended by the debtor. *Id. quoting Kawaauhau v. Geiger,* 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Mr. Santilli's intent was not established by depositing the settlement check alone. It is the

failure to pay PCF over 5 years for 10 clients' loans that show Mr. Santilli's intent to never honor his obligations. Mr. Santilli's intent to not pay made him aware that he was injuring PCF. The court finds that Mr. Santilli caused a willful injury.

An action is "malicious" if it is taken "in conscious disregard of one's duties or without just cause or excuse." *Id. quoting In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994). In this case, Mr. Santilli's conscious disregard of his duties is evidenced by the many false statements made to PCF when the settlement checks had been cashed. Mr. Santilli could have mitigated PCF's injury by paying PCF late or otherwise negotiating to pay a lower amount. At no point did Mr. Santilli attempt to explain or justify to PCF why he refused to pay. The court finds that Mr. Santilli's actions caused a malicious injury. PCF has established by a preponderance of evidence that the debts that Mr. Santilli owes to PCF are non-dischargeable because Mr. Santilli caused a willful and malicious injury to PCF.

1. Judgment is entered in favor of the Plaintiff in Counts I, II, and III of the complaint.

2. The debt owed by the Debtor to the PCF is non-dischargeable for the loans provided to Crystal Straw, Jeffery Johnson, Jermaine Chambers, Adonnas Brown, Ruben Machado, La Dawn Howard, Percy Carter, Francois Stinson, Dewan Johnson, and Wayne Lopez.[2]

**Date: March 2, 2018**  **ENTERED:**

*Jacqueline P. Cox*
**Jacqueline P. Cox**
**United States Bankruptcy Judge**

---

[2] The court offered to rule on the amount of the debt owed; this was rejected.

16